UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | | |
|---|---|---|---|
| DARRELL CARTER, | ) | | |
| | ) | | |
| Plaintiff, | ) | Case No: | 1:08-cv-32 |
| | ) | | |
| v. | ) | Chief District Judge Curtis L. Collier | |
| | ) | | |
| UNUMPROVIDENT CORP., | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM**

Before the Court is a motion for summary judgment filed by Defendant UnumProvident (Court File No. 15). Plaintiff Darrell Carter responded (Court File No. 26) and Defendant replied (Court File No. 28). For the following reasons, the Court will **GRANT** the motion.

**I.     RELEVANT FACTS**

Plaintiff Darrell Carter ("Plaintiff") was employed by Defendant UnumProvident ("Defendant") from July 10, 2000, to February 13, 2007. He began as a Sales Support Specialist Trainee, but was promoted to Sales Support Specialist in February 2002. In March 2002, Plaintiff became a Manager of Customer Service and remained in various management positions until August 2004, when the company restructured and Plaintiff went back to a Sales Support Specialist role. In May 2005, Plaintiff joined the Rating and Implementation Services ("RIS") department as a Multi-Life Case Specialist. His supervisor in RIS was Beverly LeClaire ("LeClaire").[1] According to Defendant, Plaintiff had difficulty transitioning into his role in the RIS department, although he

---

[1] Defendant spells LeClaire's name "Leclaire." However, it appears from her signature on her affidavits, LeClaire capitalizes the C in her name. For consistency, the Court will use LeClaire.

received extensive training.

On October 8, 2006, Plaintiff injured his knee and missed work on October 9 and 10 for medical appointments. He contends he notified LeClaire about the injury and the appointments. According to Plaintiff, he and LeClaire reached a verbal agreement regarding a work schedule to take into account his medical limitations since Plaintiff was unable to drive. However, Plaintiff alleges LeClaire did not work with him and instead harassed him about his injury, telling Plaintiff it did not take her as long to recover from a knee injury and calling him into meetings with her supervisor, Rhonda Lindsay Miller ("Miller"). On October 31, 2006, LeClaire gave Plaintiff an initial warning for having four unplanned absences since August and several late arrivals. Plaintiff contends he had two planned absences in September and two unplanned absences in October, resulting from his knee injury. After receiving this warning, Plaintiff contacted Nancy Dunlap ("Dunlap") in Human Resources, who told him to file for Family and Medical Leave Act ("FMLA") benefits.

In November 2006, Plaintiff filed for FMLA leave, which was approved. The initial warning for unplanned absences was rescinded in December 2006 since it was partially based on absences covered by the FMLA. According to Plaintiff, LeClaire was unhappy about this.[2] Plaintiff's FMLA leave for knee surgery began December 14, 2006. While Plaintiff was on leave, coworker Scott Kress ("Kress") took over sending follow-ups, a job Plaintiff had primarily performed. Kress was surprised when a client commended him on the process, since the client should have received previous follow-up e-mails. Kress raised the issue with LeClaire and told her about an incident,

---

[2]Plaintiff also contends LeClaire was upset because Plaintiff complained to Human Resources about inappropriate conduct at private parties hosted by LeClaire. However, this is unrelated to an assertion of rights under the FMLA.

which occurred shortly before Plaintiff went on leave, where Plaintiff asked Kress how to perform follow-ups.[3] LeClaire checked the database where RIS tasks are stored and determined the client should have received several follow-ups from Plaintiff. She then looked at Plaintiff's computer drive where Plaintiff should have stored any spreadsheets created in relation to completing follow-ups and did not find any spreadsheets for the client. LeClaire found few spreadsheets saved on the drive with Plaintiff's initials on them, which she determined was unusual given the number of follow-ups Plaintiff had completed.[4] LeClaire investigated further and asked Defendant's IT Department to search Plaintiff's sent e-mails to see if he had sent follow-up e-mails to clients on the tasks he had marked complete. The search revealed only four follow-up e-mails.[5] Since Plaintiff had completed some follow-up tasks correctly, Defendant contends Plaintiff knew how to perform his job, but falsified his records to inflate his level of productivity. Plaintiff asserts Defendant's monitoring did not adequately assess his productivity since employees could post follow-ups to a secure website rather than sending e-mails. However, according to Defendant, a small percentage of clients were capable of receiving follow-ups through the website.

When Plaintiff returned from his FMLA leave on February 13, 2007, he was called into a meeting with LeClaire and Debbie McLanahan ("McLanahan"), a member of Defendant's human resources staff. According to LeClaire and Mclanahan, Plaintiff offered no explanation for the discrepancy between the number of follow-up tasks marked complete and the number of e-mails sent

---

[3] Plaintiff denies questioning Kress about the follow-up process.

[4] According to Defendant, Plaintiff marked 450 follow-up tasks complete during the year 2006, but only 30 spreadsheets were saved under his name.

[5] Defendant searched from September to December 2006, during which time Plaintiff marked 238 follow-up tasks complete.

and spreadsheets saved. Plaintiff, however, says he explained he posted follow-ups to the website. He was terminated effective February 13 for falsifying records. A termination letter signed by LeClaire was sent to Plaintiff. Plaintiff claims he was fired in retaliation for taking FMLA leave and having FMLA-covered absences in October 2006.

**II.     STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. ANALYSIS

The Family and Medical Leave Act ("FMLA") provides eligible employees with up to 12 weeks of leave per 12-month period when the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A serious health condition is defined as "an illness, injury, impairment, or physical or mental condition that involves . . . (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." § 2611(11). Plaintiff alleges his employment was terminated in violation of the FMLA, which prohibits discrimination against any individual who "oppos[es] any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). This is known as the retaliation or discrimination theory of recovery and requires Plaintiff to show the employer "acted against employees specifically because those employees invoked their FMLA rights." *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (emphasis omitted).

Plaintiff contends he presents direct evidence of discrimination. Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Where the plaintiff can establish improper motive for the termination, the burden shifts to the defendant to show "it would have made the same decision absent the impermissible motive." *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir. 2002)). Here, Plaintiff asserts LeClaire's statement regarding how long she took to heal from a knee surgery, LeClaire's initial willingness to work with Plaintiff without filing for FMLA, the meeting with LeClaire and Miller about his prospective surgery, and the rescinded warning for Plaintiff's absences are direct evidence of improper motive. Since none of these assertions would demonstrate Defendant was

5

predisposed to discriminate or acted on that predisposition, *see Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003), Plaintiff has not presented direct evidence of discrimination.

The burden-shifting analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to discrimination cases supported by indirect evidence. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315-17 (6th Cir. 2001) (applying the *McDonnell Douglas* framework to an FMLA retaliation claim). Plaintiff must establish a prima facie case of retaliation by showing (1) he availed himself of a protected right under the FMLA, (2) he suffered an adverse employment action, and (3) there was a causal connection between the exercise of his rights under the FMLA and the adverse employment action. *Edgar*, 443 F.3d at 508 (6th Cir 2006). If Plaintiff meets his burden, Defendant must demonstrate a legitimate, nondiscriminatory rationale for the adverse employment action. *Id.* Plaintiff then has the burden of establishing the proffered reason is pretext to mask discrimination. *Skrjanc*, 272 F.3d at 315.

Defendant does not dispute Plaintiff requested and took FMLA leave and was thereafter terminated. The only issue is whether Plaintiff has established a causal connection between the exercise of his rights under the FMLA and his termination. Establishing a prima facie case of retaliation is not intended to be overly burdensome on the plaintiff and temporal proximity can be sufficient to show causation. *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007). Since Plaintiff was terminated on the day he returned from FMLA leave and the evidence of LeClaire's dissatisfaction with his absences and work schedule due to his knee injury,[6] Plaintiff has presented sufficient evidence to survive the prima facie stage of proof.

---

[6]There is some dispute as to whether LeClare was the decision maker as to Plaintiff's termination. For the purpose of summary judgment, the Court assumes LeClare, as Plaintiff's supervisor, did make the decision to terminate Plaintiff.

The burden shifts to Defendant to present evidence of a "legitimate non-discriminatory reason for terminating" Plaintiff. *Id.* Defendant asserts Plaintiff was terminated, following an investigation into the matter, for falsifying records, not because he took FMLA leave. Accordingly, Defendant has presented sufficient evidence and the burden shifts back to Plaintiff to demonstrate the proffered non-discriminatory reason is pretext.

To establish pretext, Plaintiff must generally show "the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Blair v. Henry Filters Inc.*, 505 F.3d 517, 532 (6th Cir. 2007) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc)) (internal quotation marks omitted). Plaintiff asserts he correctly performed the follow-up process and did not falsify records, showing Defendant's reason has no basis in fact. Plaintiff does not dispute the numbers presented by Defendant (i.e. Plaintiff saved 30 spreadsheets for 450 tasks and sent four e-mails for 238 tasks). Instead, Plaintiff presents Defendant's policy for follow-up tasks, which specifically provides for follow-ups that would not require an e-mail. Defendant submitted evidence showing a minority of follow-ups could be handled without an e-mail, whereas Plaintiff does not demonstrate all but four tasks were completed without an e-mail. Plaintiff also attempts to show pretext by alleging he was properly trained on how to perform a follow-up and LeClaire never told him he was doing them incorrectly. This, however, has no bearing on whether Defendant's proffered reason is legitimate since Defendant does not contend LeClaire was aware Plaintiff was not properly completing follow-up tasks prior to Kress bringing it to her attention. In addition, the only issue before the Court is whether Defendant terminated Plaintiff because he took FMLA leave. Defendant could legitimately fire Plaintiff for failing to perform his job duties, even

7

if this resulted from inadequate training or supervision. Since Plaintiff's evidence is insufficient for a jury to find Defendant's proffered reason was pretext, Plaintiff has not met his burden of proof.

Viewing the evidence in the light most favorable to Plaintiff, there is no genuine dispute as to any material fact and Defendant is entitled to judgment as a matter of law. A jury could not rely upon Plaintiff's evidence to find Defendant's reason for Plaintiff's termination was false. Thus, Plaintiff failed to meet his burden in the final stage of the *McDonnell Douglas* analysis and summary judgment is proper.

**IV.     CONCLUSION**

For the reasons discussed above, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 15).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**